CHARLES L. and MARILYN F. McCOLLUM, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McCollum v. Commissioner
Docket No. 10863-77.
United States Tax Court
T.C. Memo 1978-435; 1978 Tax Ct. Memo LEXIS 79; 37 T.C.M. (CCH) 1817; T.C.M. (RIA) 78435; November 1, 1978, Filed Charles L. McCollum, pro se. Marion Malone, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Fred S. Gilbert, Jr., pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. *80 OPINION OF THE SPECIAL TRIAL JUDGE GILBERT, Special Trial Judge: Respondent determined a deficiency in the petitioners' Federal income tax for the year 1974 in the amount of $ 3,108. The statutory notice of deficiency made adjustments to the amounts claimed by petitioners on their tax return as deductions for medical expenses, sales tax, contributions, and miscellaneous expenses. Prior to and during the trial of this case, the parties reached agreement on a number of these items. They have agreed that medical expenses, claimed in the amount of $ 5,887, shall be allowed in the total amount of $ 4,351.10 and that sales tax, claimed in the amount of $ 2,452, shall be allowed in the total amount of $ 2,269.02. They have also agreed that miscellaneous deductions, claimed in the total amount of $ 5,355, shall be allowed in the amount of $ 3,479 and disallowed in the amount of $ 1,502, leaving for decision of the Court the question of whether the petitioners may deduct all, or any part, of the $ 374 expended by them for hand tools, under section 162. Petitioners claimed deductions, under section 17o, for charitable contributions to a number of organizations, in the total amount *81 of $ 5,545.18. The respondent allowed deductions for charitable contributions in the total amount of $ 2,583. There remains for decision by the Court the question of whether the petitioners are entitled to a further deduction of any part of the $ 240 disallowed as a contribution claimed to have been made to Calvary Chapel, the $ 167 disallowed as a contribution claimed to have been made to the Boy Scouts of America, the $ 100 disallowed as a contribution claimed to have been made to the Y.M.C.A., and the $ 2,454 disallowed as a contribution claimed to have been made to the National Ski Patrol. Some of the facts in this case were stipulated and are so found by this reference, except as otherwise indicated. The petitioners filed a timely joint Federal income tax return for the year 1974. At the time the petition herein was filed, the petitioners resided at 19785 Coastline Lane, Huntington Beach, California. During the year 1974, petitioner Charles L. McCollum (hereinafter referred to as petitioner) held two jobs, one as a sales representative with Richardson Graphics and one as a pressman, operating printing presses for Arcadia Graphics Pacific Press in Los Angeles. It appears *82 that petitioner is a journeyman pressman and a member of the International Printing Pressman's Union, Local 78. He had been a pressman for many years prior to the year in question but had been discharged and had taken the job as sales representative. Subsequently, however, he had been recalled to his job as a pressman "on a part-time basis as a fill-in." In his job as a sales representative, the petitioner was required to install, maintain, and service graphic art equipment, such as plate processors, film processors, coders, roller coders, and fountain solution stabilizers on presses. In order to perform this work, it was necessary for the petitioner to have a full complement of hand tools. In his job as pressman, he was the operator of printing presses and was required to make adjustments to them while they were running and also while they were idle. In addition, he was required to install bankets, plates, plate makers, rollers, gears, reduction gears, and cylinders. The performance of these duties also required the petitioner to have a full complement of hand tools. Since some of the presses upon which the ptitioner worked were of foreign manufacture, having parts whose *83 measurements were expressedin terms of the metric scale, the petitioner was required to have two sets of tools, one for work on presses manufactured in the United States and the other for presses manufactured abroad. The petitioner was not furnished tools by either of his employers and was not reimbursed by either of them for tools purchased by him. Since the respondent has conceded that the petitioner expended $ 373.51 for hand tools, we find that he is entitled to a deduction in this amount as an ordinary and necessary expense of his trade or business, under section 162. The respondent's argument that the petitioner may have, from time to time, used some of these tools around his home is frivolous. There is nothing in the record to show that they were purchased for that purpose, as opposed to being purchased for use in his trade or business. On their income tax return, the petitioners claimed a deduction of $ 500 as a charitable contribution to Calvary Chapel. This was allowed by the respondent in the amount of $ 260 and disallowed in the amount of $ 240. Petitioner offered no evidence at the trial to substantiate a contribution to this organization in any amount greater *84 than the $ 260 allowed by the respondent. Therefore, the disallowance of $ 240 by the respondent is sustained. Likewise, evidence offered by the petitioner at the trial failed to substantiate a contribution to the Boy Scouts of America in an amount greater than the $ 42 allowed by the respondent. Therefore, the disallowance of $ 167 by the respondent is sustained. The petitioner conceded at the trial that a contribution to the American Red Cross claimed in the amount of $ 243.75 should be allowed only to the extent of $ 242. The petitioner testified at the trial that the contribution of $ 100 claimed to have been made to the Y.M.C.A. consisted principally of some cash contributions and the use of his truck for hauling Christmas trees sold by the Y.M.C.A. to raise funds, but that he had rendered voluntary services in other capacities during the year. As will be discussed further below, expenses incurred in rendering voluntary services to a charitable organization are deductible as charitable contributions, even though the value of the services is not. While the evidence offered as to the expenses incurred in connection with petitioner's voluntary services to the Y.M.C.A. and *85 as to the amount of cash contributed was far from explicit or definite in amount, we believe that some expense was incurred and that some cash contributions were made. Therefore, applying the rule of Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), petitioners are allowed a deduction of $ 50 as a charitable contribution to the Y.M.C.A. The National Ski Patrol (hereinafter sometimes referred to as the patrol or the ski patrol) is a voluntary organization engaged in providing for the safety and well-being of recreational skiers in the national forests. It was founded in 1932 and has its headequarters in Denver, Colorado. It has a membership throughout the United States of 37,617 members. The Southern California Division of the National Ski Patrol has 560 members, who are assigned to 11 different ski patrols. The members of the ski patrol, among other things, render first aid to injured persons, perform rescues of persons who have wandered outside the regular skiing area, and give instructions to skiers with respect to adjustments to ski equipment and safety practices. The members of the National Ski Patrol also act as a governing body on the ski slopes, policing *86 the area for what are referred to as "out of control skiers" or persons who are skiing in a manner that is hazardous to themselves as well as to other skiers. The petitioner's wife, his oldest daughter, Nancy, and his oldest son, Tim, were also members of the National Ski Patrol during the year in question and served as patrolmen, along with petitioner, on the ski slopes that year. Petitioner and the other members of his family were assigned to the Snow Summit Ski Patrol at Big Bear Lake, Big Bear Mountain. Being members of the National Ski Patrol assigned to the Snow Summit Ski Patrol, the petitioner and the other members of his family were required to patrol on both Saturday and Sunday, two weekends a month, on a schedule acceptable to them arranged prior to the start of the ski season. In addition to volunteer patrolmen, such as the petitioner and the other members of his family, there were a small number of patrolmen who were hired to patrol the area during the weekdays. Since the number of skiers during the weekdays had become almost as large as the number of skiers on the weekends, the petitioner and other patrolmen were importuned to come up at any time that they were *87 able to help patrol during the week, as well as on the weekends. When on duty the petitioner and the other members of his family were required to be on the ski slopes at 6:00 a.m. on Saturday mornings. Therefore, they usually left their home in Huntington Beach, California on Friday afternoon and drove in a motor home to the ski area and spent Friday and Saturday nights there, usually in the motor home. On a few occasions they did pay for lodgings in a hotel or motel in the skiing area. Also taken to the skiing area on these trips, or at least on most of them, were three of the petitioners' children who were not members of the ski patrol and who did not perform any services for that organization. They apparently did ski, however, and were allowed to use the skiing area for one-half of the usual cost. The petitioner and his wife and the two children who were patrolmen went on duty at 6:00 a.m. on Saturdays and Sundays and were on duty each day for approximately 12 hours, until 5:30 p.m. or 6:30 p.m., except when they were assigned to night patrols. On those occasions, they would get a twohour break for dinner, between 3:00 p.m. and 5:00 p.m., and were required to be back on *88 patrol from 5:00 p.m. until 10:00 p.m. The petitioner's log, kept in connection with the services performed by him and his wife in connection with the National Ski Patrol, shows that they made 15 trips to the skiing areas during the year 1974 and that, on most trips, they were away from home for two nights each trip. On one of the trips, they were away from home for six nights, on another for four nights, and on another for three nights. The petitioners' children who were not members of the ski patrol accompanied them on most of these trips and shared in the food that was purchased in connection therewith. They also shared in the shelter of petitioners' motor home on such trips. The National Ski Patrol provided neither food nor lodging for the petitioner, his wife, and the two children who were members and served as volunteer patrolmen. On their income tax return for the year 1974, the petitioners claimed a deduction of $ 4,199.87 as a contribution made to the National Ski Patrol. The respondent has conceded that the National Ski Patrol is an organization contributions to which are deductible under section 170. It was stipulated that the petitioners maintained a log reflecting *89 items connected with their activities in the National Ski Patrol which showed the following: Gasoline for motor home driven to ski areas;
735 gallons at 60" a gallon $ 441.00
Meals purchased at or enroute to ski areas
249.40
Groceries purchased for consumption at ski areas
739.52
Lodging paid for in connection with ski patrol
activities
214.24
Use of motor home for lodging at ski areas; 24
nights valued at $ 22 per night
528.00
Ski equipment
1,737.06
Ski equipment repairs
108.74
Registration fees
150.32
Lift tickets
37.50
$ 4,205.78 It was also stipulated that the $ 1,746 allowed by the respondent as a deduction for contributions to the National Ski Patrol was composed of the following items: Mileage $ 437.00
Food
851.00
Miscellaneous
458.00
$ 1,746.00 Evidence at the trial disclosed that the $ 458 allowed as a deduction for "Miscellaneous" expenditures was composed of the following items: A radio contributed to the patrol
$ 126.00
Ski equipment such as parkas, etc.
143.00
Food purchased and contributed to the patrol
for refreshments at its annual meeting
38.00
Registration at various events in connection
with the ski patrol
151.00
*90 The respondent has conceded that the petitioner spent $ 37.50 for lift tickets in connection with his voluntary services to the ski patrol and also spent $ 138.31 for a chain saw contributed to it. It was stipulated that petitioners had driven their motor home 5,986 miles in going to the ski areas and that the cost of its operation was not less than 10" per mile. Thus, the cost of this travel incident to the rendition of donated services amounted to $ 598.60. [3]
With the presumption of correctness that attaches to respondent's determination that the National Ski Patrol is an organization contributions to which are deductible under section 170 and his prior allowance to petitioners of deductions in the amount of $ 1,746, as expenses incurred in connection with their rendition of voluntary services to this organization, the citation of any authority for the Court's allowance of deductions, or increased deductions, in this area would *91 seem to be superfluous. Nevertheless, section 1.170-2(a)(2), Income Tax Regs., does provide as follows: No deduction is allowable for contribution of services. However, unreimbursed expenditures made incident to the rendition of services to an organization contributions to which are deductible may constitute a deductible contribution. For example, the cost of a uniform without general utility which is required to be worn in performing donated services is deductible. Similarly, out-of-pocket transportation expenses necessarily incurred in rendering donated services are deductible. Reasonable expenditures for meals and lodging necessarily incurred while away from home in the course of rendering donated services also are deductible. For the purposes of this section, the phrase "while away from home" has the same meaning as that phrase is used for purposes of section 162. Such deductions have been allowed taxpayers in many cases decided by this Court. See, for example, Smith v. Commissioner,60 T.C. 988 (1973). See also Rev. Rul. 55-4, 1955-1 C.B. 291, indicated in the petitioner's log in this case to have been relied upon by him, and Rev. Rul. 58-279, 1958-1 C.B. 145, *92 in which the taxpayer was allowed a deduction for unreimbursed out-of-pocket expenses incident to his performance of voluntary services in the Civil Air Patrol. The petitioners have claimed a deduction of $ 528 for the use of their motor home for lodging at ski areas at the rate of $ 22 per night for 24 nights. Since this was not an out-of-pocket expenditure, we find that this deduction is not allowable. We find no more reason to allow a deduction for the fair market value of lodging in the taxpayer's own motor home than for allowing a deduction for the fair market value of the services actually rendered by him to the charitable organization. Neither represents an actual cash expenditure. With respect to the deduction of $ 1,737.06 claimed for the purchase of ski equipment, we find that, except for the $ 143 already allowed by respondent, this item is not allowable as a deduction. The ski equipment was purchased and owned by the petitioner and members of his family. There was no donation of the equipment to the National Ski Patrol, albeit there was use of it in the service of that organization. The petitioner testified at the trial that the members of the National Ski Patrol *93 were required to wear a uniform consisting of a certain type of parka and a certain type of dark ski pants. We agree with the respondent's allowance of a deduction of $ 143 for this purpose. Since the petitioner did not do any skiing during the year in question, except while on duty with the National Ski Patrol, we find that the expense of $ 108.74 incurred by him for the repair of ski equipment was directly related to the performance of his services as a volunteer with the National Ski Patrol and is, therefore, deductible. The petitioners claimed a deduction for meals purchased at, or enroute to, ski areas in the amount of $ 249.40 and, also, for groceries purchased for consumption at ski areas in the amount of $ 739.52. The respondent has already allowed a deduction of $ 851 for food. Since the food purchased was consumed not only by the four members of the family who were members of the patrol but, also, by the other three children, we believe that the amount allowed by the respondent for this purpose is reasonable and that a deduction in the higher amount claimed should not be allowed. The respondent has conceded that the amount of $ 214.24 was actually spent by the petitioners *94 for lodging in connection with their activities as volunteers in the National Ski Patrol. The evidence indicates that the lodging thus paid for was provided only for those persons in petitioner's family who were active National Ski Patrolmen. Therefore, petitioners are allowed a deduction of $ 214.24 for this item. In accordance with the discussion above, we find that the petitioners are entitled to a deduction for charitable contributions made to the National Ski Patrol in the total amount of $ 2,406.39. This total is composed of the following: Cost of operation of motor home $ 598.60
Food
851.00
Lodging
214.24
Miscellaneous
(a) Allowed by respondent
$ 458.00
(b) Lift tickets
37.50
(c) Ski equipment repair
108.74
(d) Chain saw donated to
patrol
138.31
742.55
$ 2,406.39
We are unimpressed by the respondent's argument that the petitioners are not entitled to deduct expenses as charitable contributions to the National Ski Patrol because of the fact, principally, that they enjoyed skiing, enjoyed the work that they were doing, and enjoyed the camaraderie of the other members of the ski patrol. Respondent cites the case of Seed v. Commissioner,57 T.C. 265 (1971), *95 in which deductions claimed for expenses allegedly incurred in the rendition of services to a charitable organization were disallowed. However, we find that case completely inapposite to the present situation. In the Seed case, the taxpayers plainly paid for a personal, pleasure trip to Europe, with no apparent rendition of any services whatsoever to the organization claimed to have been the beneficiary of the expenditure. Here, the petitioner and his wife and son and daughter rendered actual, vigorous service to the National Ski Patrol for 12 hours a day on two days of each weekend that they were on duty, at the least. It is obvious from the record that, if the petitioner and others of a like disposition had not volunteered for this work, the National Ski Patrol or those operating the ski areas would have had to pay someone to perform a similar service. In fact, they did pay other patrolmen during the times that the petitioner and his fellow volunteer patrolmen were not on duty.
It would seem to go without saying that a person would have to enjoy skiing, be an avid ski enthusiast, and, indeed, be an excellent skier in order to be qualified to serve as a patrolman in the *96 National Ski Patrol. Surely, the individual who was allowed to deduct out-of-pocket expenses in connection with his voluntary services in the Civil Air Patrol, by Rev. Rul. 58-279, supra, must have been an ardent flier and must have enjoyed flying while on duty with the Civil Air Patrol. Surely, also, the many other volunteers who have been allowed deductions by numerous cases and revenue rulings for expenses incurred in the rendition of services to the Red Cross, churches, hospitals, etc., must have enjoyed and been enthusiastic about the voluntary work that they were doing. We find that an enthusiasm for and an enjoyment of skiing or any other activity engaged in while performing voluntary services for a charitable organization are not grounds for disallowing a deduction for out-of-pocket expenses incurred in connection therewith that would otherwise be deductible. If the rule were otherwise, it seems that the regulation would be rendered virtually meaningless. * * *
In accordance with the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. Mileage on petitioners' "personal automobile driven to the ski areas" was also stipulated by the parties. However, petitioner's testimony and his log of trips failed to show any such travel by means of a vehicle other than the motor home.↩